UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TORAN V. PETERSON,

                Plaintiff,                Case No. 1:09-cv-233

v.                                                Honorable Paul L. Maloney

UNKNOWN FOCO et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Klinesmith, Groves, Smith, Armstrong, Lowery, Wolven, Gilkey, Huss, Pettit, Wayne, Cassel, Breedlove, Caruso and Stapleton. The Court will serve the complaint against Defendants Johnson and Lindy.

**Discussion**

I. Factual allegations

Plaintiff Toran Peterson presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Ionia Maximum Correctional Facility (ICF). He sues MDOC Director Patricia Caruso, MDOC Manager of Prison Affairs James Armstrong, and the following ICF employees: Resident Unit Officers (unknown) Johnson and (unknown) Lindy; Grievance Coordinator (unknown) Klinesmith; Administrative Assistant R. Groves; Warden Willie Smith; Hearings Investigator (unknown) Lowery; Hearings Officer (unknown) Wolven; Resident Unit Manager (unknown) Gilkey; Assistant Deputy Warden Erica Huss; Sergeant (unknown) Pettit; Assistant Resident Unit Supervisor (unknown) Wayne; Sergeant (unknown) Cassel; Grievance Coordinator M. Breedlove, and (unknown) Stapleton.

Plaintiff alleges that he has been subjected to a series of retaliatory and harassing actions by Defendant Johnson, which the other Defendants failed to investigate or prevent. On June 15, 2006, Plaintiff asked Johnson to take him to the typing room. Johnson allegedly never took Plaintiff. On June 17, 2006, Johnson allegedly skipped Plaintiff when it was time to clean up the cells. Defendant Johnson again failed to take Plaintiff to the typing room on June 21, 2006. Later that evening, Plaintiff asked Johnson why he was having a problem every time Johnson worked and threatened to file a grievance. Johnson allegedly responded, "[i]f you think I'm messing with you, I'll show you what messing with you is an[d] if plaintiff did write a grievance he would ensure that it didn't go anywhere and he would hook plaintiff up." (Am. Comp., Attach. ¶ 29, docket #10 at 8.) Plaintiff submitted a grievance against Johnson on the morning of June 21, 2006, alleging ill manners and threats of retaliation. On June 23, 2006, as Plaintiff was being escorted to the typing

room, he saw Johnson approach the officer who was working on Plaintiff's corridor. When he was returned to his cell an hour later, it had been "trashed," and all of Plaintiff's belongings were thrown on the bunk. He asked one of the officers on duty who had searched his cell. He was told that Johnson had searched it. Plaintiff noticed that he was missing the three milk cartons that he kept under his bed, filled with water, for overnight drinking.

On June 24, 2009, Plaintiff was reviewed on a misconduct report charging the possession of dangerous contraband, based on allegations that the contents of one of the milk cartons taken from Plaintiff's cell contained an unknown substance that smelled strongly of urine. Plaintiff denied having any urine in the cartons that were in his cell, and he demanded that the urine be tested to determine who was the source. No test was done. He also asked the hearing investigator, Defendant Lowery, to present questions to Johnson, one of which Lowery allegedly did not ask. Defendant Wolven found Plaintiff guilty of the misconduct on the basis of Johnson's testimony. Defendant Stapleton denied Plaintiff's request for rehearing. Plaintiff alleges that Johnson substituted the water in the carton with the unknown liquid, that Lowery violated the Eighth Amendment by failing adequately to investigate, that Defendant Wolven violated the Due Process Clause of the Fourteenth Amendment in finding him guilty without looking at the surveillance tape, and that Stapleton violated both the Eighth and the Fourteenth Amendments by denying Plaintiff's appeal.

Plaintiff also alleges that he was denied access to the courts and was the victim of a civil conspiracy. As the basis for his claims, Plaintiff contends that he was never given a receipt for the grievance he filed on July 24, 2006 and that Defendants Klinesmith, Groves, Breedlove, Smith and Armstrong violated his rights by conspiring to reject the grievance as duplicative of another

grievance. He contends that Defendants' conduct was a fraudulent effort to prevent him from exhausting his administrative remedies and, thereby, his access to the courts.

Plaintiff next alleges that, on November 13, 2006, while Plaintiff was housed in detention, Johnson tampered with his meal. Plaintiff was unable to see what Johnson was doing because the window shutter on his cell was closed. Plaintiff concludes that Johnson tampered with the food solely because Johnson stopped the food cart outside Plaintiff's cell for 30 seconds before opening the window shutter and delivering the meal. Plaintiff alleges that he ended up flushing the meal down the toilet. Plaintiff filed a grievance, which Defendants Pettit and Wayne investigated. Pettit and Wayne allegedly did not view the surveillance videotape, and neither did Defendant Klinesmith, who denied Plaintiff's grievance at Step I. Plaintiff appealed to Step II, which Defendant Smith denied. Defendant Armstrong denied the Step III grievance. According to Plaintiff's allegations, neither Smith nor Armstrong reviewed the videotape.

The evening of November 13, 2006, Johnson brought the mail on the food cart. Accordingly to Plaintiff, Johnson stopped in front of Plaintiff's door and went through the mail for over 30 seconds before giving Plaintiff his institutional mail. Again, although Plaintiff could not see Johnson because of the shuttered window, he contends that Johnson must have taken some of the mail. Plaintiff covered his cell door window with his towel in order to force Johnson to get the sergeant. When the sergeant arrived, Plaintiff demanded that she view the videotape. Plaintiff then wrote a grievance, which he alleges Defendants Klinesmith, Groves, Huss, Breedlove, Smith and Armstrong failed to investigate and wrongly denied on appeal without viewing the videotape. Plaintiff alleges that Johnson stole his mail in retaliation of him filing grievances and that the other Defendants denied him his rights under the First Amendment.

On November 14, 2006, Plaintiff allegedly tried to talk to Johnson about his desire not to have further problems between them. Johnson stated, "Peterson, you don't have anything coming, that grievance of Rutgers, Yeah, I haven't forgot about you[."] (Am. Compl., Attach. at ¶104.) Plaintiff filed another grievance against Johnson, which was rejected as duplicative. Plaintiff again alleges that Klinesmith, Breedlove, Smith and Armstrong improperly investigated and denied his grievance.

Plaintiff alleges that, at 10:00 p.m. on November 14, 2006, he was taken out of his cell so that the lights could be fixed. When he was returned to his cell, he noticed that his towels were missing and that five grievances that he had written were in the toilet. When Johnson came around to check on the inmates, Plaintiff asked where his towels were. Johnson told Plaintiff that he was placing him on towel restriction, allegedly without following the proper procedures. Plaintiff told Johnson that he had just been taken off towel restriction that day, to which Johnson allegedly responded, laughing, "[S]o you should be glad that I don't strip you of your clothes, take your Quartermaster and trash the cell, I'll think about taking you off in Jan./Feb., I'm the warden here, you'll learn . . . ." (Am. Compl., Attach. at ¶113.) Plaintiff alleges that Defendant Johnson retaliated against him for filing grievances. Plaintiff filed another grievance about the incident, which he alleges that Defendants Cassel, Gilkey, Klinesmith, Breedlove, Smith and Armstrong inadequately investigated and improperly denied.

On December 13, 2006, Defendant Johnson allegedly gave Plaintiff a regular food tray, even though he knew that Plaintiff was a vegetarian. When Plaintiff complained, Johnson wrote that Plaintiff was refusing his meal and took the tray away. Plaintiff told Johnson that he was going to write Johnson up. Johnson allegedly came to the door and whispered, "[Y]ou haven't

learned yet monkey, I took your mail, I took your tray, I do what I want, get the drift, stop writing grievances or its [sic] going to get worst [sic] bitch[."] (Am. Compl., Attach. at ¶ 130.) Plaintiff wrote another grievance and demanded that the videotape be watched. He alleges that Johnson discriminated against him on the basis of race by making a racial slur and that Johnson's conduct was retaliatory. He again alleges that Cassel, Gilkey, Klinesmith, Breedlove, Smith and Armstrong failed to properly investigate and improperly denied the grievance.

On December 17, 2009, while Plaintiff was in the shower, Johnson allegedly searched Plaintiff's cell and removed Plaintiff's affidavit about Johnson's conduct. Later that evening, Johnson came to Plaintiff's cell to take him to yard. Plaintiff was handcuffed behind the back and wore ankle cuffs, which were linked by a chain to the handcuffs. When Plaintiff got to the door to go to yard, Defendant Johnson allegedly told Defendant Lindy, "We're taking him back to the cell, stand behind me." (Am. Compl., Attach. at ¶ 141.) When Plaintiff entered his cell and the cell door began to close, Johnson began screaming, "[T]he door, the door." (Am. Compl., Attach. at ¶144.) Plaintiff began frantically to get out of the way of the door, but he could not, as Johnson was still holding the chain. Defendant Lindy reopened the door and Johnson yanked Plaintiff completely out of the cell, spinning him around until Plaintiff was facing the railing along the upper corridor. There exists a twenty-foot drop from the upper corridor to the lower corridor. Plaintiff alleges that Johnson's intent was to cause Plaintiff to fall over the railing. Johnson began to lift up on the chain, attempting to lift Plaintiff up. Then Lindy and Johnson began pulling Plaintiff back and forth and ultimately threw him to the floor. Johnson placed a knee on Plaintiff's back, holding Plaintiff for five minutes, despite Plaintiff's protests that he could not breathe. Other officers then responded to the scene and escorted Plaintiff back to his cell. Plaintiff alleges that he never resisted or engaged

in any physical actions against Johnson or Lindy. Plaintiff experienced shooting nerve pain from his wrist to his upper arm for several months. The pain prevented him from being able to write for more than 15 to 20 minutes at a time, a few times a day. Plaintiff alleges that Defendants Johnson and Lindy used excessive force in violation of the Eighth Amendment.

On December 18, 2006, Plaintiff was charged with an allegedly false misconduct, which reported that Plaintiff had pulled Johnson's hand in the door as it was closing. Plaintiff again requested the video. Defendant Wolven held a hearing on the misconduct on January 10, 2007. Plaintiff alleges that the hearing was outside the 14-day limit provided by MDOC policy. Wolven found Plaintiff guilty of the misconduct and gave him the maximum detention of 30 days. Plaintiff alleges that, because the hearing was untimely and no reason was provided, Wolven deprived Plaintiff of due process. He also alleges that he was denied due process when Wolven refused to allow Plaintiff to view the videotape of the incident and when he was not provided with Lindy's statement before the hearing. Plaintiff contends that Defendant Stapleton is liable for the due process violation because he upheld the misconduct finding.

Plaintiff alleges that Defendants Klinesmith, Groves, Smith, Armstrong, Gilkey, Huss, Pettit, Wayne, Cassel, and Breedlove are liable because they approved or knowingly acquiesced in Johnson's conduct by failing to investigate the truthfulness of Plaintiff's complaints against Johnson. He also alleges that Defendant Smith is liable because he has followed a policy of inaction in controlling staff to ensure humane treatment and has failed to investigate and discipline officers for assaulting prisoners. Similarly, he alleges that Defendant Caruso engaged in a policy of inaction in responding to prisoner claims of abuse.

Plaintiff seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Judicial Immunity

Defendants Wolven and Stapleton are hearing officers whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmate's § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, Defendants Wolven and Stapleton will be dismissed.

### B. Rejection of Grievance

Plaintiff alleges that Defendants Klinesmith, Groves, Breedlove, Smith and Armstrong violated his rights by conspiring to reject his grievance as duplicative of another grievance. He alleges that their actions prevented him from exhausting his administrative remedies and thereby deprived him of his right to access the courts.

Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

In addition, even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. In light

of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim regarding the rejection of his prison grievances.

## C. Failure to Act and Conspiracy

Plaintiff generally alleges that Defendants Klinesmith, Groves, Huss, Breedlove, Smith, Armstrong, Lowery, Pettit, Wayne, Cassel, Gilkey and Caruso either failed to conduct an adequate investigation of misconduct charges and grievances or failed adequately to supervise Johnson and Lindy. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft*, 129 S. Ct. at 1948; *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Klinesmith, Groves, Huss, Breedlove, Smith, Armstrong, Lowery, Pettit, Wayne, Cassel, Gilkey and Caruso engaged in any active unconstitutional behavior.

Similarly, Plaintiff's general allegations that these Defendants conspired with Defendant Johnson to allow retaliation and the use of excessive force are inadequate to state a claim for conspiracy. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions or had a policy to allow such actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's allegations of conspiracy are vague, conclusory and speculative. Therefore, he fails to state a claim for conspiracy. Accordingly, he fails to state a claim against Defendants Klinesmith, Groves, Huss, Breedlove, Smith, Armstrong, Lowery, Pettit, Wayne, Cassel, Gilkey and Caruso.

### D. Defendants Johnson and Lindy

The Court concludes that, at this juncture, Plaintiff has stated sufficient allegations to support a claim that Defendants Johnson and Lindy used excessive force against Plaintiff in violation of his Eighth Amendment rights. The Court further concludes that Plaintiff has stated a claim of retaliation against Defendant Johnson. Therefore, the Court will order service of the complaint against Defendants Johnson and Gilkey.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that the claims against Defendants Klinesmith, Groves, Smith, Armstrong, Lowery, Wolven, Gilkey, Huss, Pettit, Wayne, Cassel, Breedlove, Caruso and Stapleton will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Johnson and Lindy.

An Order consistent with this Opinion will be entered.


Dated:    July 16, 2009              /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     Chief United States District Judge