UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | |
|---|---|
| TORAN V. PETERSON, #318935, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:09-cv-225 |
| | ) |
| v. | ) Honorable Paul L. Maloney |
| | ) |
| RICHARD JOHNSON, et al., | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Defendants. | ) |
| _____ | ) |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. §1983. Plaintiff's amended complaint concerns conditions of his 2006 confinement at the Ionia Maximum Correctional Facility (ICF). The defendants are ICF's Resident Unit Officers (RUOs) Richard Johnson and Larry Lindy. Plaintiff alleges defendant Johnson "retaliated" against him in violation of his First Amendment rights by filing three major misconduct charges against plaintiff: (1) on June 23, 2006, for possession of dangerous contraband; (2) on November 13, 2006, for disobeying a direct order; and (3) on December 17, 2006, for an assault and battery. Hearing officers found plaintiff guilty of all three major misconduct charges, and none of the convictions have been overturned. Further, plaintiff alleges that Johnson's failure to take him to the typing room on June 15, 17, and 21, 2006, the lack of towels in his cell and a missed meal on December 13, 2006, and an affidavit that went missing after plaintiff returned from the shower on December 17, 2006, all constituted retaliation. Plaintiff alleges that on December 17, 2006, defendants Johnson and Lindy

used excessive force in subduing him in violation of his Eighth Amendment rights.[1] He asks the court to exercise supplemental jurisdiction over state-law tort claims. Plaintiff sues defendants in their individual and official capacities and seeks an award of monetary damages.

The matter is now before the court on defendants' motions for summary judgment. (docket #s 56, 59). Plaintiff has filed his response (docket # 68), and defendants' motions are ready for decision. For the reasons set forth herein, I recommend that all plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that the court, in its discretion, decline to exercise supplemental jurisdiction. I further recommend that defendants' motions for summary judgment be granted, and that judgment be entered in defendants' favor on all plaintiff's federal claims.

**Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.[2] FED. R. CIV. P. 56(a); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578

---

[1] The court's July 16, 2009 order (docket # 15) dismissed all plaintiff's claims other than the claims addressed in this report and recommendation.

[2] "The standard for granting summary judgment remains unchanged" under the amendments to Rule 56 that went into effect on December 1, 2010. *See* FED. R. CIV. P. 56 advisory committee note (2010 amendments).

<mark>
</mark>

(6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. *See Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

## Proposed Findings of Fact

The following facts are beyond genuine issue. Plaintiff is serving a nonparolable life sentence in the custody of the Michigan Department of Corrections (MDOC) on his first-degree murder conviction. He was an inmate at the Ionia Maximum Correctional Facility (ICF) at all times relevant to this case. (Am. Compl. ¶ 3, docket # 10).[3] Resident Unit Officers (RUOs) Richard Johnson and Larry Lindy are employed by the State of Michigan at ICF. (Johnson Aff. ¶ 1, docket # 57-3, ID # 503; Lindy Aff. ¶ 1, docket # 60-2, ID # 607).

In June 2006, plaintiff was housed in ICF's administrative segregation unit. (Am. Compl. ¶ 22) Each administrative segregation prisoner is provided an opportunity for two hours per week of personal access to the unit's mini law library. The room cannot be occupied by more than one administrative segregation prisoner. A typewriter is provided to allow prisoners to type legal documents. Once an administrative segregation prisoner requests access to the mini law library, his name is placed on the list of prisoners waiting to use the room when it is available. (Johnson Aff. ¶ 4). Plaintiff did not have access to the administrative segregation unit's "typing room" on June 15, 17 and 21, 2006. (Am. Compl. ¶¶ 22-28). RUO Johnson did not deny plaintiff access to the mini law library on these dates. (Johnson Aff. ¶ 5).

---

[3]Plaintiff's amended complaint is verified under penalty of perjury. The portions of plaintiff's pleading satisfying the requirements of Rule 56(c)(4) of the Federal Rules of Civil Procedure are considered as his affidavit in opposition to defendants' motions for summary judgment. *See El Bey v. Roop*, 530 F.3d 407 (6th Cir. 2008); *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000). Legal conclusions, whether asserted by a party in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Doe v. Magoffin County Fiscal Ct.*, 174 F. App'x 962, 966 (6th Cir. 2006).

1. Major Misconduct of June 23, 2006

On June 23, 2006, plaintiff was charged with the major misconduct of possession of dangerous contrabandA search of plaintiff's cell in ICF's administrative segregation unit revealed that he had hidden three milk cartons containing an unknown liquid under his bed. The liquid had the strong odor of urine. (Johnson Aff. ¶ 6). Plaintiff admits that he had three milk cartons containing liquid under his bed. He states that they held water, not urine. (Am. Compl.¶¶ 39, 47). A hearing officer found plaintiff guilty of this misconduct charge. (*Id.* ¶ 57).

On July 24, 2006, after the hearing officer found plaintiff guilty of the major misconduct, plaintiff filed a grievance. (Grievance No. ICF-06-07-1029-28A, docket # 57-5, ID # 536). Plaintiff states that on June 20, 2006, he wrote a grievance against RUO Johnson for "ill mannerism." (*Id.* ¶ 30). There is no record of this purported June 2006 grievance. He filed a grievance in July 2006. Plaintiff states that his July grievance "quot[ed] the exact things which were in the original [and undocumented June 2006] grievance." (Am. Compl. ¶ 62). The July grievance states that the earlier grievance asked that Johnson's actions toward plaintiff be "watched carefully" and that Johnson be "placed on the yard in GP permanently." (docket # 57-5, ID # 536).

2. Major Misconduct of November 13, 2006

On November 13, 2006, plaintiff was housed in a detention cell at ICF. (Am. Compl. ¶ 71). He covered his cell window with a towel in violation of prison rules. (*Id.* ¶ 98). Defendant Johnson issued a major misconduct charge against plaintiff for disobeying a direct order to remove the towel covering his cell window. (11/13/06 Major Misconduct Report, docket # 57-3, ID # 509; Johnson Aff. ¶ 10). Plaintiff admits that he covered his cell window, but claims to have done so "to

cause Johnson to get the sergeant" so that he could make a complaint about Johnson's handling of his mail (*Id.* ¶¶ 92- 98). On November 29, 2006, a hearing officer found plaintiff guilty of the major misconduct. (11-29-06 Major Misconduct Hearing Report, docket # 57-3, ID # 510). Plaintiff was sentenced to seven days of detention to be served from December 9, 2006, through December 16, 2006. (*Id.*).

Plaintiff was placed on towel restriction for one month: November 13, 2006, through December 13, 2006. (11/13/06 Restriction of Segregation Property and Privileges, docket # 57-3, ID # 511)The towel restriction order stated that a new order would be necessary to extend the restriction beyond December 13, 2006. (*Id.*)On December 13, 2006, plaintiff was taken out of his cell to allow repair of light fixtures. When he returned to his cell, there were no towels. Plaintiff attributes the absence of towels in his cell (on a date his towel restriction remained in effect) to defendant Johnson (docket # 10 ¶¶ 111-13), and he believes that the towels were taken in retaliation for a grievance he filed approximately a month earlier regarding the handling of his mail. (*Id.*, ¶¶ 100, 118).

Plaintiff was dissatisfied with the meal Johnson attempted to deliver to his cell on December 13, 2006. According to plaintiff, it was a regular meal tray rather than a vegetarian tray. (Am. Compl. ¶¶ 119-31). Plaintiff states that after he told Johnson that he was a "veggy," Johnson sarcastically replied that plaintiff was refusing the meal, shut the food slot, and left. (*Id.* ¶¶ 122-23).

On December 17, 2006, when plaintiff returned from the showers, he found that an affidavit he had written against Johnson was missing. He attributes the paper's disappearance to Johnson. (Am. Compl. ¶¶ 136-37).

3. <u>Major Misconduct of December 17, 2006</u>

On December 17, 2006, plaintiff was charged with the major misconduct of committing an assault and battery, for grabbing officer Johnson's arm and pulling it into his cell. (12/07/06 Major Misconduct Report, docket # 57-3, ID # 507). Officers Lindy and Johnson had attempted to escort plaintiff from his detention unit cell to the prison yard, but plaintiff became verbally abusive and refused orders to let go of the restraint chains. The physical confrontation began when the officers were attempting to put plaintiff back into his cell. (Lindy Aff. ¶¶ 3, 4)The hearing officer found plaintiff guilty. (01/10/07 Major Misconduct Hearing Report, docket # 57-3, ID # 508; Am. Compl. ¶ 176). The hearing officer found that plaintiff grabbed Officer Johnson's right hand and pulled the officer's hand into the cell door as it was closing. Johnson would not have voluntarily placed his hand in a position where the cell door could close on it. "[T]his was a non-consensual physical contact to pull the officer's hand and arm in to injure [him]." (docket # 57-3, ID # 508). The hearing officer sentenced plaintiff to 30 days of detention to be served from January 15, 2007, through February 14, 2007. (*Id.*).

According to plaintiff, on December 17, 2006, defendants Johnson and Lindy escorted him from his cell to the entry door of the prison's yard, then they turned around and began taking him back to his cell. (Am. Compl. ¶¶ 139-42). "When plaintiff entered the cell door and the cell door began to close Johnson began screaming 'the door, the door.'" Plaintiff states that he "frantically tried to get away from the door out of shock," but couldn't because Johnson was on the other end of the restraints. (*Id.* ¶ 145). When Lindy "reopened" the cell door, plaintiff was pulled

back out into the hallway. Plaintiff decided to fall to the ground because he was concerned that he might go over the railing or hit his face on it. (*Id.* ¶¶ 148-52). Plaintiff was able to "balance" himself in a manner that prevented defendants Johnson and Lindy from moving him. He states that he had some difficulty breathing during the few minutes he was held in place before other staff members responded and helped escort plaintiff back to his cell. (*Id.* ¶¶ 153-59). Plaintiff denies grabbing Johnson's hand. (Plf. Aff. ¶ 47, docket # 39-4, ID # 349). He states that during this altercation he suffered a small cut on his right wrist because the restraints tightened and broke through his skin. (*Id.* ¶ 160). He believes that his handcuffs were too tight and asserts that his wrist abrasion left a scar. (Plf. Aff. ¶¶ 43-44). His amended complaint states he experienced "nerve pain" in his wrist over the next hundred days, limiting his ability to write to "approximately 15 to 20 minutes at a time 2 to 7 times a day." (*Id.* ¶ 162). His January 15, 2010 affidavit states that he experiences nerve pain in his right wrist "throughout the day every now and again in the present day." (Plf. Aff. ¶ 46, docket # 39-4, ID # 349). There is no medical evidence that plaintiff suffers from any nerve damage. December 17, 2006 health care records reveal that plaintiff suffered no visible injury or trauma. (docket # 60-2, ID # 628).

On March 12, 2009, plaintiff filed this lawsuit.

**Discussion**

1.   Eleventh Amendment Immunity

All plaintiff's claims for damages against defendants in their official capacities are barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court

against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986). A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendants are entitled to judgment in their favor as a matter of law on plaintiff's claims for monetary damages against them in their official capacities.

2. Major Misconduct Convictions

Plaintiff has no possible claim under the Fourteenth Amendment's Due Process Clause regarding his major misconduct convictions. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir.2004); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000). Plaintiff is serving a mandatory

nonparolable life sentence for first-degree murder. "[H]e is serving life and doesn't receive good time." (Plf. Brief at 17, docket # 39). As a consequence, the major misconduct convictions do not and cannot change the duration of his sentence. *See Sandin*, 515 U.S. at 486-87. Because the misconduct convictions had no effect on any liberty interest, they cannot support a due-process challenge.

      3.      Eighth Amendment

As a prisoner incarcerated under a criminal conviction, plaintiff's principal substantive rights are guaranteed by the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Ingraham v. Wright*, 430 U.S. 651, 664 (1977). The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crimes. To establish a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause, the offending conduct must reflect an unnecessary and wanton infliction of pain. *See Ingraham*, 430 U.S. at 670. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause the core judicial inquiry is that set out in *Whitley [v. Albers*, 475 U.S. 312, 320-21 (1986)]: whether the force was applied as a good faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Plaintiff must satisfy both an objective and subjective test to establish a viable Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Plaintiff has not presented evidence upon which any rational trier of fact could find in his favor on either component of his Eighth Amendment claims against defendants.

To meet the objective component, the prisoner must be subjected to a serious deprivation. *Wilson*, 501 U.S. at 298. The federal courts recognize that an Eighth Amendment claim based on the excessive use of force must allege more than a simple assault and battery. *See, e.g., Leary v. Livingston County*, 528 F.3d 438, 445 (6th Cir. 2008); *Pruett v. Hatchett*, 292 F. App'x 408, 409 (5th Cir. 2008). To be sure, under *Hudson v. McMillian*, guards may not inflict an unjustified beating upon a prisoner and then seek to defend their actions by the lack of serious or life-threatening injuries. *See McHenry v. Chadwick*, 896 F.2d 184, 187 (6th Cir. 1990). By the same token, if the objective component of the Eighth Amendment is to mean anything, it cannot be satisfied by a mere unwanted touching. *See Walters v. Corrections Corp. of Am.*, 119 F. App'x 190, 192-93 (10th Cir. Dec. 2004); *Samuels v. Hawkins*, 157 F.3d 557, 558 (8th Cir. 1998); *Hampton v. Alexander*, No. 95-3457, 1996 WL 40237, at * 1 (6th Cir. Jan. 31, 1996) ("[N]ot every push or shove, even if it appears to be unnecessary, violates a prisoner's constitutional rights."); *Norman v. Taylor*, 25 F.3d 1259, 1262-63 (4th Cir. 1994) (*en banc*). Plaintiff has not shown any serious deprivation. He was involved in a confrontation with prison guards which resulted in his major misconduct conviction for committing an assault and battery on RUO Johnson, and he was subdued without suffering any documented injury. This does not approach satisfying the objective component of an Eighth Amendment claim.

Plaintiff falls short of satisfying the subjective component of an Eighth Amendment claim. One factor the court can look to in determining whether the defendant's use of force could plausibly have been thought necessary is the extent of injury suffered by the inmate. *Hudson*, 503

U.S. at 7; *see Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008). There is no medical evidence of any injury. Plaintiff states that he suffered a small cut, because his handcuffs were too tight. This cannot possibly rise to the level of Cruel and Unusual punishment. Minor injuries such as bruises and swelling are generally insufficient to support a claim under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See, e.g.*, *Silguero v. Acheson*, No. 7:08-cv-201, 2009 WL 56341, at * 2 (N.D. Tex. Jan. 9, 2009) (collecting cases). "In determining whether the use of force was wanton or unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. at 321). It is difficult to imagine a prisoner who posed a greater threat to the safety of prison guards and other prisoners than plaintiff did on the date in question. Plaintiff was a convicted murderer housed in the detention unit of Michigan's highest security level prison. Plaintiff began the altercation. Any force defendants used against plaintiff was *de minimis*. A far more forceful response would have been justified without violating the Eighth Amendment's Cruel and Unusual Punishments Clause. Force was used merely to place plaintiff back in his cell. No reasonable trier of fact could find on the present record that defendants acted maliciously and sadistically for the purpose of causing plaintiff serious harm. *See Hudson*, 503 U.S. at 7.

4. First Amendment

On summary judgment, a plaintiff asserting a First Amendment retaliation[4] claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*); *see also Lustig v. Mondeau*, 211 F. App'x 364, 372 (6th Cir. 2006). The plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

"The first element [plaintiff] must establish for his retaliation claim[s] [are] that he was engaged in conduct protected by the First Amendment." *Hill v. Lippin*, 630 F.3d 468, 472 (6th Cir. 2010). The Sixth Circuit recognizes that a prisoner's filing of a grievance can constitute protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Frivolous grievances are not protected conduct. *See Hill v. Lippin*, 630 F.3d at 472; *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (calling a hearing officer a "foul and corrupted bitch" was not protected conduct); *Herron v. Harrison*, 203 F.3d at 415. I will assume for analytical purposes that plaintiff engaged in protected conduct by filing non-frivolous grievances.

The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct. It is well

---

[4]"Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

-13-

established that "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Dep't of Corrections*, 196 F. App'x 350, 358 (6th Cir. 2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)). Missing a meal, loss of a towel, missing a piece of paper, and not being able to access a typewriter for a few days are trivial inconveniences to be expected in an institutional setting. The purported instances of retaliation unrelated to the major misconduct convictions are not actions that would deter a person of ordinary firmness from the exercise of his First Amendment rights. *Hix*, 196 F. App'x at 358.

Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue. "The third element of a First Amendment retaliation claim requires the plaintiff to prove a causal connection between the protected conduct and the adverse action. When assessing motive in the context of a summary judgment motion, bare allegations of malice do not suffice to establish a constitutional claim. This court has held that circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (internal quotations and citations omitted). Plaintiff must demonstrate that his protected speech was a substantial or motivating factor in the adverse action taken by defendant. Specifically, plaintiff must point to specific, nonconclusory evidence reasonably linking his speech to the adverse action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). The Sixth Circuit has interpreted this inquiry to mean that a motivating factor is "essentially but-for cause-without which the action being

challenged simply would not have been taken." *Vereecke*, 609 F.3d at 400 (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007), and *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)). "Substantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke*, 609 F.3d at 400; *see Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity standing alone, is insufficient to establish a causal connection for a retaliation claim."). Plaintiff has not presented evidence sufficient to support a causal connection between his protected conduct and Johnson's alleged retaliatory acts. An affidavit or verified complaint "contain[ing] only conclusory allegations and naked conclusions of law" does not create a genuine issue of fact for trial. *Sigmon v. Appalachian Coal Prop., Inc.*, No. 08-6258, 2010 WL 3736276, at * 5 (6th Cir. Sept. 17, 2010); s*ee Doe v. Magoffin County Fiscal Ct.*, 174 F. App'x at 966; 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2738 at 346-56 (3d ed. 1998).

"Even if the plaintiff establishes all three elements, the defendant may avoid liability by showing 'that the same action would have been taken in the absence of protected activity.'" *Whiteside v. Parrish*, 387 F. App'x 608, 612 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d at 399). Hearing officers found plaintiff guilty of the major misconducts of possession of dangerous contraband, disobeying a direct order, an assault and battery. A prisoner who claims that the bringing of a misconduct charge, in and of itself, is retaliatory faces an insurmountable obstacle where, as here, the charge is upheld by a neutral attorney-hearing officer. There is no allegation here

of falsifying records, planting evidence, or other wrongdoing, beyond the alleged filing of a retaliatory misconduct charge. The decisions finding plaintiff guilty of all three major misconduct charges establish that he violated prison rules. Defendants thereby sustain their burden of showing that the same action would have been taken in the absence of plaintiff's grievances. Defendant Johnson is entitled to judgment in his favor as a matter of law on all plaintiff's retaliation claims.

5. Supplemental Jurisdiction

Plaintiff asks the court to exercise jurisdiction over purported state-law claims. "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009). There is no reason in this case to depart from the general rule.

**Recommended Disposition**

For the foregoing reasons, I recommend that all plaintiff's claims against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that the court, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's purported state-law claims. I further recommend that defendants' motions for summary judgment (docket #s 56, 59) be granted, and that judgment be entered in defendants' favor on all plaintiff's federal claims

Dated: March 28, 2011            /s/ Joseph G. Scoville
                                 United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal.*See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).